IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THERESA FROELICHER, for her son, T.F., a minor, | ) ) | CIVIL ACTION 4:04-21944-MBS-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, Theresa Froelicher, filed this action on behalf of her minor son, T.F., seeking judicial review of the final decision of the Commissioner of Social Security denying T.F.'s application for Supplemental Security Income (SSI) based on disability under Title XVI of the

Social Security Act (the Act), 42 U.S.C. §§ 1381-1383c. Plaintiff's application filed on April 18, 2002 (Tr. 54-56), alleged that T.F. became disabled on November 15, 1998, due to a dysplastic[1] kidney, tubes in both ears, adenoid removal, and attention deficit hyperactivity disorder (ADHD) (Tr. 72). The application was denied initially and on reconsideration (Tr. 30-34, 37-39). An administrative hearing was initially scheduled for November 19, 2003, but it was postponed in order for plaintiff to obtain representation (Tr. 265-268). The hearing was subsequently held on January 1, 2004 (Tr. 248-264), at which time plaintiff elected to proceed without representation (Tr. 250-251). The Administrative Law Judge (ALJ), Alexander Hild, issued an unfavorable decision on May 10, 2004, finding that T.F. was not disabled within the meaning of the Act because he did not have impairment or combination of impairments that met, medically equaled, or functionally equaled any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 (Tr. 14-24).[2] Plaintiff obtained representation on June 21, 2004 (Tr. 10). Plaintiff's counsel submitted additional evidence to the Appeals Council on June 22, 2004 (Tr. 224-247). On July 30, 2004, the Appeals Council denied plaintiff's request for review (Tr. 5-7). The Appeals Council's denial of review thereby made the ALJ's decision the Commissioner's final decision for purposes of judicial review under section 205(g) of the Act.

---

[1] Dysplastic is defined as abnormal growth or development. MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY (1996).

[2] As stated previously, plaintiff's mother appeared and testified at the hearing on January 21, 2004, but there was no representation by an attorney. Attorney Richard Paul had withdrawn as plaintiff's representative on November 18, 2003. However, it is noted that the ALJ stated in his hearing decision that "Richard Paul, an attorney, represents the child in this matter." (Tr. 14).

## II.  FACTUAL BACKGROUND

The plaintiff, T.F. was born June 12, 1998, (Tr. 54), and was four years old when his mother filed for SSI benefits and was five at the time of his hearing. Plaintiff's mother alleged that plaintiff became disabled on November 15, 1998, four months after his birth due to physical and emotional disorders. Plaintiff has been diagnosed with a seizure disorder, a right sided dysplastic kidney, attention-deficit/hyperactive disorder, and speech delay. (Tr. 145, 153, 158, 159, 188).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

    (1)    Plaintiff disagrees with the Commissioner's assertion that the ALJ satisfied his duty to assist T.F.'s mother and to develop the record.

    (2)    The Commissioner's assertion that Charleston County School Multidisciplinary Team Report would not have changed the ALJ's findings is simply wrong.

(Plaintiff's brief).

In the decision of May 10, 2004, the ALJ found the following:

    1.    The child was born on June 12, 1998 and is in kindergarten part-time and Early Child Development program.

    2.    The child has not engaged in substantial gainful activity since the alleged onset date (20 CFR § 416.924(b)).

    3.    The child has "severe" impairments (20 CFR § 416.924(c)).

    4.    The child's attention deficit hyperactivity disorder, right dysplastic kidney, and seizures do not meet or medically equal the severity of any impairment listed I Part B of Appendix 1 to Subpart P, (20 CFR §§ 416.924(d)(1), 416.925 and 416.926).

3

5.      The child does not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the listings (20 CFR §§ 416.924(d)(2) and 416.926a).

6.      The child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision.

7.      The child has not been under a "disability," at any time from the alleged onset date through the date of this decision (20 CFR § 416.906).

(Tr. 23-24).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding

4

of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

An individual under age eighteen will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked or severe functional limitations." 42 U.S.C. § 1382c(a)(3)C)(1). The Commissioner's regulations require the ALJ to apply a three part test as follows: (1) Determine whether the child is currently engaged in substantial gainful activity. If so, he is not disabled; if not, (2) determine whether the child has a severe impairment or impairments.  If not, he is not disabled; if so (3) determine whether the child's impairments meet, medically equal, or functionally equal any listed impairment. If not, he is disabled. If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1, the Commissioner will decide whether it results in limitations that functionally equal such requirements. To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results in "marked" limitations in two domains or an "extreme" limitation in one domain.


## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.  The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in her

memorandum. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein.

On December 12, 2001, at age 3½ years, T.F. underwent a neurodevelopmental evaluation by developmental pediatrician Nicole Craven, M.D.  His behavioral history was notable for having several temper tantrums daily, with a very high activity level.  Odd or inappropriate behaviors included licking of books and one wall in his house, head banging, biting, and aggression.  Dr. Craven diagnosed mild expressive language impairment and behavior difficulties with hyperactivity.  She referred T.F. to a behavior management program and indicated he required preschool in a structured environment, speech therapy, and evaluation for an Early Childhood Development (ECD) program. (Tr. 197-199).

On April 15, 2002, T.F. had tubes surgically placed in both ears for treatment of chronic otitis media with effusion.  He also underwent an adenoidectomy for treatment of upper airway obstruction (Tr. 129).

A discharge summary from the Medical University of South Carolina (MUSC) Children's Day Treatment program dated May 10, 2002, indicated that T.F. had been referred to the program in February 2002, for evaluation and treatment of disruptive behaviors.  His discharge diagnoses were ADHD, developmental speech delay, history of kidney failure and chronic otitis media, and behavior problems.  Psychiatrist Jonathan M. Stein, M.D., noted that during the course of treatment, T.F. made satisfactory to good progress toward the majority of his treatment goals.  He responded positively to a combination of behavior and pharmacological interventions, and the "most significant improvement was observed in T.F.'s ability to sit, attend to, and participate in group activities without being disruptive."  T.F. was able to tolerate a 15-minute-

long group activity without difficulty at the time of discharge. His rate of compliance increased significantly to approximately 70%. His social skills improved, and he was able to engage in solitary and parallel play for extended periods without physical aggression and temper outbursts. He did not lash out physically toward other children. Plaintiff was not an active participant in the program, but reported that T.F.'s behavior had improved at home (Tr. 139).

On August 16, 2002, at age four, T.F. underwent a speech and language evaluation. Speech-language pathologist Rita A. Burns found T.F. had mildly to moderately-delayed receptive language development and moderately-delayed expressive language development. His voice was within normal limits, resonance was unremarkable, fluency was appropriate, and he had adequate intelligibility of speech production. Ms. Burns found T.F. was friendly, but that he "minimize[d] his ability to benefit from information presented due to his uncooperativeness." She recommended speech and language therapy (Tr. 133-136).

On September 10, 2002, T.F. was seen by his primary care physician, Alan Anderson, M.D. Plaintiff reported T.F. exhibited aggressive behavior toward himself and had urinary accidents. Physical examination was unremarkable. T.F. received passing scores on a neurodevelopment evaluation in the categories of personal/social skills, language, gross motor skills, and fine motor/adaptive skills. Dr. Anderson assessed behavioral problems/ADHD, immunization delay, and a history of dysplastic kidney and vesicoureteral reflux (Tr. 190-192).

On October 4, 2002, T.F. was seen at the MUSC pediatric renal clinic for followup of a right dysplastic kidney. A renal scan demonstrated that the left kidney was performing 95% of the kidney function. Examination was unremarkable. From a neurological standpoint, T.F. was grossly nonfocal and was very active during the examination. He was assessed with right sided

dysplastic kidney, history of vesicoureteral reflux (for which he had previously been treated with antibiotics), ADHD with impulsive behavior, severe constipation, and diurnal enuresis. He was referred to the pediatric gastrointestinal clinic for evaluation of his constipation (Tr. 188).

T.F. underwent a psychological evaluation by Mark A. McClain, Ph.D., on October 22, 2002. Dr. McClain noted that other than attending the ECD preschool program, T.F. was not receiving any other types of special education intervention. He found T.F. was able to care for his personal needs and perform activities of daily living at an age appropriate level. T.F. demonstrated the ability to understand and follow simple directions. On examination, T.F. was extremely active and exhibited inappropriate exploratory behavior in the office. He required frequent direction in order to gain focus and attention. Testing demonstrated T.F. had average intelligence, with a three-month developmental delay. Dr. McClain assessed Attention deficit/ hyperactive disorder, combined type; dysplastic kidney; chronic otitis media per parent report; problems with the primary support group; and educational problems. Dr. McClain noted that the fact that T.F. was participating in a preschool ECD class suggested that his educational needs were being addressed by the public school system (Tr. 143-145).

On December 10, 2002, a State Agency psychologist reviewed T.F.'s records and completed a "Childhood Disability Evaluation Form." The psychologist determined that T.F.'s impairments were severe, but that they did not meet, medically equal, or functionally equal an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, the psychologist found T.F. had "marked" limitation in the domain of interacting and relating with others; "less than marked" limitation in the domains of acquiring and using information, attending and completing tasks, and

health and physical well-being; and no limitation in the domain of moving and manipulating objects (Tr. 147-152).

On February 18, 2003, T.F. presented to MUSC for a pediatric neurology clinic consultation regarding a four-month history of "staring spells." T.F.'s spells lasted 15 seconds each and were generally followed by a period of agitation lasting two to three minutes. Neurologist Earnest Barbosa, M.D., noted T.F. had some sinus and respiratory congestion, constipation, occasional bladder incontinence, and ADHD and that he was receiving occupational and speech therapy. Physical examination revealed an early systolic heart murmur and was otherwise unremarkable. Upon neurological examination, T.F. was attentive and oriented. His language, cognition, and memory were intact. He was hyperactive, but capable of following directions. Dr. Barbosa assessed possible absence seizures and prescribed Depakote. A subsequent EEG report was normal  (Tr. 158-159).

T.F. was re-admitted to the MUSC Children's Day Treatment program in February 2003, and discharged in March 2003. The discharge summary indicates that he made significant progress and responded quickly to the behavior interventions. At discharge, he was able to participate in all therapeutic activities without difficulty. Few limits were necessary, and he readily responded to verbal redirection. He was able to interact cooperatively with other children when he transitioned back into public school, and there was not verbal or physical aggression observed during the last two weeks of treatment. It was noted that he derived "great benefit" from stimulant medication and that, without medication, he had an extremely difficult time functioning even in a small, highly structured classroom setting. Plaintiff reported positive changes in T.F.'s behavior at discharge (Tr. 153).

9

T.F. saw psychiatrist R.W. Scott, M.D., on April 2, 2003. Dr. Scott noted T.F. was possibly improving on Depakote, but that he was still restless and impulsive. At a followup visit on April 8th, Dr. Scott referred T.F. to an occupational therapist for evaluation of sensory integration problems (Tr. 220-221).

Notes from a followup visit to the MUSC pediatric neurology department dated April 30, 2003, indicated that T.F.'s staring spells were improving and only occurred once every other day. The note indicated T.F. had previously been receiving speech therapy, but that it was no longer necessary. A neurological examination revealed that T.F. had intact memory, language, and knowledge, and that his attention was intact, although he required some redirection (Tr. 170).

On May 7, 2003, T.F. was treated by primary care physician Alan Anderson, M.D., for ear pain, cough, and a runny nose. On examination, he was alert, interactive, and in no distress (Tr. 167).

On June 6, 2003, State Agency physician F. Keels Baker reviewed T.F.'s records and completed a "Childhood Disability Evaluation" form. Dr. Baker concluded T.F. had severe impairments, but that they did not meet, medically equal, or functionally equal the impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, Dr. Baker found T.F. had no limitation in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being and that he had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others (Tr. 211-216).

On October 2, 2003, T.F.'s multidisciplinary team met and noted that his behavior had improved with Concerta. An accompanying Interim Summary of Progress form indicated T.F.'s cognitive skills were excellent and that he still had behavior problems (Tr. 110).

Notes from a multidisciplinary team meeting conducted on November 5, 2003, indicated that T.F. was "doing better" at home but that his behavior in the classroom had not improved (Tr. 95).

T.F. returned to Dr. Scott on November 12, 2003. Dr. Scott noted T.F. was oppositional and at times cursed and yelled, particularly when his needs ere not met immediately. T.F. was easily distracted at times. Dr. Scott reported T.F.'s behavior had been a little better since a recent increase in his medication dosage, and that his teachers had seen some improvement, although T.F. still had some problems cooperating (Tr. 219).

School behavior documentation sheets from November and December 2003 indicated that T.F. had engaged in behaviors such as refusing to sit, wetting himself, having fits, tearing wall decorations, throwing cereal, and using extensive profanity (Tr. 117-119).

T.F. returned to Dr. Scott on January 7, 2004. Plaintiff reported that T.F. continued to have problems at school with aggression and oppositional behavior and that he was transitioning between ECD and a kindergarten class. She reported that T.F. did not follow rules, bit other children, and threw objects. Dr. Scott found T.F. was active, irritable at times, and difficult to redirect, but that his thought processes were coherent and his insight and judgment were age appropriate. She noted T.F. was still very symptomatic despite the maximum medicine dosage and recommended increasing his behavioral training (Tr. 218).

On January 9, 2004, T.F.'s multidisciplinary team met to discuss his strengths and needs. It was noted that his behaviors continued to cause concern. The team discussed the need for re-evaluation in order to determine appropriate school placement to determine T.F.'s eligibility for the Emotionally Disabled (ED) program. Notes from the meeting indicated that Dr. Scott supported a placement in the ED program if he qualified and that Dr. Scott felt T.F. required "the most restrictive, intensive placement possible"(Tr. 93).

On January 28, 2004, T.F. was disciplined at school after he tried to hit and bite a teacher and threw objects at the teacher. T.F. was disciplined at school on February 4, 2004, for using profanity and throwing his shoes. On February 10, 2004, T.F. was sent home early from school after he tried to hit and bite his teacher, called the teacher names, and ran down the hallway (Tr. 91-92).

On February 4, 2004, Dr. Scott noted that plaintiff reported some improvement in T.F.'s behavior since changing medications, and that his outbursts were less frequent, but more severe. She indicated he had done better on Depakote, but had been taken off Depakote because it interfered with his seizure medication. On evaluation, T.F.'s mood was "fine" and his affect was calm. Dr. Scott adjusted the medications (Tr. 217).

Plaintiff's attorney submitted the report dated February 26, 2004, from the Multidisciplinary Team for the Charleston County School District to the Appeals Council. In this report, the team concluded that plaintiff's performance in ECD demonstrated an inability to achieve adequate academic progress and there was evidence that his own learning process is consistently and significantly disrupted by his disability. (Tr. 227). The Team noted that plaintiff's behaviors severely interfered with the learning process and he can be disruptive, non-

12

compliant, and aggressive. (Tr. 228). Based on the report, plaintiff was placed in an ED (emotional disability) self contained class for first grade.


# V. ARGUMENTS

Plaintiff argues that the secretary erred by failing to consider all of the evidence. Specifically, plaintiff asserts that the ALJ and Appeals Council failed to consider how plaintiff was able to perform in a school/educational environment with the limitations caused by his attention deficit disorder, his hyperactvity disorder and his delayed speech development. Plaintiff asserts that the records of his school evaluation and placement were submitted to the Appeals Council (Tr. 226-247) but the Appeals Council did not consider the information even though it was incorporated into the record. Plaintiff contends that the Charleston County School District Multidisciplinary Team's Report was dated February 26, 2004, which was more than two months before the date of the ALJ's hearing decision. Plaintiff asserts that this report could have changed the outcome of the ALJ's decision. Plaintiff argues as follows:

> Considering that the ALJ found plaintiff had "marked" limitation of function in the domain of Interacting and Relating to Others (Tr. 21) the ALJ would have found plaintiff disabled if he found a "marked" limitation of function in only one other domain. (Tr. 19). The finding that plaintiff's progress in his ECD kindergarten class was "Limited. Slow Progress" (Tr. 228) and that plaintiff's "learning process is constantly and significantly disrupted" (Tr. 228) is material to a finding concerning the extent of plaintiff's limitation of function in the domain of Attending and Completing Tasks. In his decision when discussing this domain, the ALJ found that plaintiff's teachers found some improvement in plaintiff's behavior since medication was increased. The report of the Charleston County School District's team contradicts this conclusion. There was constant disruption and limited, slow progress and not improvement. Concerning the domain of Acquiring and Using

13

> Information, the ALJ found that the fact that plaintiff was
> participating in an ECD class would suggest that his educational
> needs were being addressed by the public school system (Tr. 20).
> The team's finding that plaintiff's behaviors severely interfere with
> his learning (Tr. 228) is inconsistent with the ALJ's finding and
> strongly supports a finding that Plaintiff has a "marked" limitation
> in this domain.
>
> . . . There is no evidence in plaintiff's file that contradicts the
> findings of the Charleston County School District's Multidiscipline
> Team. Accordingly, plaintiff contends that absent persuasive
> evidence contradicting the findings of the school district team, the
> decision of the ALJ that Plaintiff is not disabled is not supported by
> substantial evidence.

(Plaintiff's brief p. 5-6).

Defendant argues that the Appeals Council did not have to articulate its own assessment of additional medical evidence. Further, defendant argues that the Multidisciplinary Team Report did not provide information that would have changed the outcome of the ALJ's decision.

When evidence not considered by the ALJ is submitted to the Appeals Council and is incorporated into the record, the reviewing court must consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence. Hart v. Apfel, No. 98-2320. 1999 WL 365555, at *3 (4th Cir. June 7, 1999) [unpublished opinion]. However, in conducting its review, the District Court is to determine whether substantial evidence supports the Commissioner's decision, and in order to conduct such a review it is necessary to have some knowledge of the basis for that decision, especially when additional items of evidence were presented to the Appeals Council that the ALJ did not have before him. "A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court." Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978) [published decision]. In the Jordan case, a coal miner

14

was seeking benefits in a black lung disease claim. The claimant lost at the administrative hearing before the ALJ and appealed the decision to the administrative Appeals Council and submitted additional evidence. The Appeals Council stated only that the additional evidence had been considered and summarily affirmed the denial of benefits. The Fourth Circuit reversed the Appeals Council's decision in light of the inadequacy of the explanation given for rejection of the additional evidence submitted for its consideration. The Fourth Circuit stated:

> Several new items of medical evidence, not all of it favorable to Jordan, were submitted to this body . . . stating only that the additional evidence had been considered, the Appeals Council summarily affirmed the denial of benefits . . . Before we determine the substantiality of the evidence to support the administrative determination, we must first ascertain whether the Secretary has discharged his duty to consider all relevant evidence. A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious. This case is not within the exception. Moreover, conclusory administrative determination may conceal arbitrariness. To eliminate these problems, we held in Arnold v. Secretary, "that the Secretary, in determining an applicant's entitlement to black lung benefits, must consider all relevant evidence, including that accumulated after June 30, 1973, and must indicate explicitly that such evidence has been weighed and its weight." 567 F.2d at 259. We think the opinion of the Appeals Council, stating as it did only that the additional evidence had been considered, was plainly deficient under Arnold. The November 1975 x-ray and the second physician's report sufficiently supported the existence of a qualifying disability to require that the Secretary explain why they were not persuasive. We therefore reverse and remand the case to the district court for the purpose of returning it to the Secretary with directions to give this claim adequate consideration and to articulate his conclusions with respect thereto.

(Jordan, 582 F.2d at 1334-1336).

There is contrary authority on this issue. In the case of <u>Hollar v. Commissioner of the Social Sec. Admin</u>.  194 F.3d 1304 (4th Cir. (N.C.)1999) [unpublished decision], the plaintiff sought review from the Appeals Council after the ALJ reached his decision denying her benefits. Hollar submitted additional evidence which the Appeals Council considered and found did not provide a basis for changing the ALJ's decision.  Plaintiff then appealed complaining that the Appeals Council failed to consider and make explicit findings concerning the evidence submitted in support of her claim after the ALJ's decision.  A panel of the Fourth Circuit held that "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision." The Fourth Circuit referred to the applicable CFR,  20 C.F.R. § 404.970(b) (1999), which does not mandate that the Appeals Council give explicit reasons for its decision.

However, there has been a decision relevant to the issues in this case, <u>Harmon v. Apfel</u>, 103 F. Supp.2d 869 (D.S.C. 2000), by United States District Judge David C. Norton.  In <u>Harmon</u>, the plaintiff sought judicial review of the Commissioner's decision and had submitted additional evidence to the Appeals Council not considered by the ALJ. The Appeals Council considered the additional evidence but found it did not suffice as a basis for changing the ALJ's decision without stating its reason for its conclusion.

Quoting from Judge Norton's decision in <u>Harmon, supra</u>,

> The court must attempt to steer its analytical ship between the twin perils of Scylla and Charybdis[3].  The court is caught between trying

---

[3] In Homer's Odyssey, Odysseus and his men had to wage battle against monsters such as Scylla and Charybdis and overcome other apparently insurmountable obstacles during the course of their voyage.  Scylla was a multi-headed female monster, personifying a dangerous rock on the

to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ.  Specifically, in this modern-day version of the classic Greek tale, Scylla represents any violation of the Fourth Circuit's rule that when evidence not considered by the ALJ is submitted to the Appeals council and is incorporated into the record, the reviewing court must also consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence.  See Wilkins v. Secretary, Dep't of Health and Human Sevs., 953 F.2d 93, 96 (4th Cir. 1991).  By attempting to adhere to such a rule when the Appeals Council fails to articulate the reasons why the new, additional evidence does not suffice as a basis for changing the ALJ's decision, this court is drawn perilously close to Charybdis, which represents any violation of the Fourth Circuit's rule that the Commissioner must indicate explicitly the weight of all relevant evidence because it is not within the province of a reviewing court to determine the weight of the evidence.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). . . This court is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it.  Unless the commissioner has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.  Arnold v. Secretary of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

Judge Norton held that, quoted verbatim:

In summary, although the Appeals Council's decision whether to grant or deny review of an ALJ's decision may be discretionary as well as unreviewable, and the regulations do not require the Appeals Council to articulate a reason for its decision not to grant review, a reviewing court cannot discharge its statutory function of determining whether the findings of the Commissioner are

---

Italian side of the Straits of Messina.  Charybdis was a creature whose daily consumption of the sea created the whirlpool off the Northeastern coast of Sicily, in the Straits of Messina.  Because these creatures lived opposite shores of a narrow strait, it was supposedly impossible to navigate away from one peril without falling prey to the other.

> supported by substantial evidence when the Appeals Council
> considered evidence that the ALJ did not have the opportunity to
> weigh, and rejected that new, additional evidence without
> specifying a reason for rejecting it or explicitly indicating the
> weight given to the evidence.

Harmon at 873.

Judge Norton addressed the Hollar decision, previously noted herein, which is contrary to his position, in his Order stating that "Because this court is not convinced by the Hollar panel's perfunctory analysis, the court declines to follow the unpublished opinion." Id. at 872. Judge Norton noted that "by definition, an unpublished opinion is not binding precedent. See U.S. Ct. of App. 4th Cir. Rule 36(c)." Judge Norton remanded the Harmon case, under a sentence four remand, to the Commissioner to articulate and state reasons for his assessment of the additional evidence presented by the plaintiff. Judge Norton concluded this was necessary so that the District Court could properly determine whether the Commissioner's decision is supported by substantial evidence.

In this case, as noted, the plaintiff submitted the Multidisciplinary Team Report to the Appeals Council. This report was completed more than two months prior to the ALJ's hearing decision. The ALJ concluded in his decision that plaintiff had "marked" limitation of function in the domain of Interacting and Relating to Others but did not have a marked function limitation in any other domain. If the ALJ had found a "marked" limitation of function in another domain, plaintiff would have been found disabled. The Report submitted to the Appeals Council concludes that plaintiff's progress in his ECD kindergarten class was "Limited. Slow progress" and his "learning process is constantly and significantly disrupted." These findings could be material to the limitation function in the domain of Attending and Completing Tasks as the

18

ALJ had concluded that the teachers found improvement when the medication was increased. Further, the Report concluded that plaintiff's behaviors severely interfere with his learning.

In denying plaintiff's request, the Appeals Council did not articulate a reason for determining why the Multidisciplinary Team for the Charleston County School District (Tr. 226-247) did not provide a basis for reversing the decision of the ALJ. The Appeals Council issued its decision stating a conclusion only. That procedure is arguably insufficient to enable a reviewing District Court "to discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence." Harmon, supra. As set forth, the Jordan decision, a published opinion, requires explicit findings by an Appeals Council in a black lung claim. The undersigned also notes that the Hollar decision (unpublished) and 20 C.F.R. § 404.970(b) does not require the Appeals Council to announce detailed reasons for its findings. However, in light of the Jordan decision and the analysis in Harmon, the undersigned finds Judge Norton's decision persuasive. Therefore, the undersigned recommends, based on the holdings in Harmon and Jordan, supra, as discussed above, that the plaintiff's case should be remanded under sentence four of 42 U.S.C. § 405(g) so that the Commissioner may indicate explicitly if the evidence was considered why the new, additional evidence does not suffice as a basis for changing the ALJ's decision. The Commissioner should consider the additional evidence and, if it finds that this additional evidence does not suffice as a basis for changing the ALJ's decision, the Order should explicitly indicate the reason. The District Court will then be in a position to determine whether or not the Commissioner's decision is supported by substantial evidence. As the undersigned is recommending a remand as set forth above, the specific arguments of the plaintiff

19

will not be addressed at this time because the undersigned cannot address whether or not there

was substantial evidence to support the decision of the ALJ and the Appeals Council.

## VI.  CONCLUSION

Based on the above, the undersigned RECOMMENDS that the Commissioner's decision

be REMANDED PURSUANT TO SENTENCE FOUR for further administrative action as set

out herein.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 11, 2005
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The Serious Consequences of a Failure to Do So

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 USC § 636 and Fed. R. Civ P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.,</u> 142 F.R.D. 91, 94 & n.3, 1992 U.S. Dist. LEXIS ® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber,</u> 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski,</u> 816 F. Supp. 408, 410, 1993 U.S. Dist. LEXIS ® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter,</u> a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made and the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce,</u> 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied,* <u>Schronce v. United States,</u> 467 U.S. 1208 (1984); and <u>Wright v. Collins,</u> 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS,</u> 932 F.2d 505, 508-509, 1991 U.S. App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin,</u> 761 F.2d 179, 180 n. 1 (4th Cir.) (party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied,* 474 U.S. 1009 (1985). In <u>Howard,</u> <u>supra,</u> the court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *** We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner,</u> 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating that 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* <u>Branch v. Martin,</u> 886 F.2d 1043, 1046, 1989 U.S. App. LEXIS® 15,084 (8th Cir. 1989) ("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark,</u> 749 F.2d 5, 7 n. 1 (3rd Cir. 1984) ("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* <u>Wright v. Collins,</u> <u>supra;</u> and <u>Small v. Secretary of HHS,</u> 892 F.2d 15, 16, 1989 U.S. App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina    29503**